UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **PAMELA TIGGS-VAUGHN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **CIVIL CASE NO. 7:07-cv-1317-SLB** |
| ) | |
| **TUSCALOOSA  HOUSING** ) | |
| **AUTHORITY,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion for Summary Judgment. (Doc. 38.)[1] Plaintiff Pamela Tiggs-Vaughn has sued her former employer, defendant Tuscaloosa Housing Authority, alleging that defendant discriminated against her on the basis of her race and retaliated against her for complaining about discrimination, in violation of Title VII, 42 U.S.C. § 2000e-2 and 2000e-3. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 38), is due to be granted.

### I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in her favor. *Id.* at 255; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). Nevertheless, "the nonmoving party's inferences [must] be ***reasonable*** in order to reach the jury." *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 468 and n.14 (1992)(emphasis added). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

## II.  STATEMENT OF FACTS

Defendant hired plaintiff on January 10, 2000, as a receptionist.  (Doc. 1 ¶ 9.) Thereafter, in April 2000, it promoted plaintiff to the position of Neighborhood Coordinator. (*Id.*)  Subsequently, in the fall of 2001, defendant promoted plaintiff to Public Housing Site Manager I.  (*See* doc. 39, Ex. A at 54).  Plaintiff held this position until her termination on April 13, 2006.  (*Id*. at 55-56.

> On March 8, 2006, plaintiff filed an EEOC charge, which stated:
>
> During the week of October 5, 2005, I applied for the position of Hope VI Community and Supportive Services Case Manager.  The employer hired two Black females from outside the agency to fill two of the eight positions.  On November 14, 2005, I again applied for another position, Neighborhood Network Coordinator; however, I was not selected, but a White female was hired.
>
> . . .
>
> I believe that I have been discriminated against because of my race, Black, in that I was denied promotions in violation of Title VII of the Civil Rights Act of 1964, as amended.  Within the last three weeks, the employer has hired one White and one Black employee.

(Doc. 39, Ex. A, ex. 11.)  This charge was given number 420-2006-01226.  (*Id.*)  The EEOC sent plaintiff a right-to-sue- letter on March 29, 2006.  (*Id*., ex. 12.)

On that same day, plaintiff sent a letter to Rick Herbert, defendant's Executive Director, and sent copies of the letter to Walt Maddox, Mayor of Tuscaloosa and Dr. Cordell Wynn, Chairman of defendant's Board of Directors.  (*Id*..)   This letter states, in pertinent part:

3

> Throughout my employment, Mr. Rick Herbert, Executive Director of the Tuscaloosa Housing Authority ["THA"], has continuously subjected me to unprofessional behavior.
>
> . . .
>
> On several occasions, I have attempted to reason with Mr. Rick Herbert about various issues that he has against me and it always turns into an unfavorable outcome, or him screaming and shouting at me.
>
> Personally, I refuse to take anymore of Mr. Herbert's uninviting and unwelcoming attitudes toward me again. Every time I talk to him or attempt to talk to him on a professional level about [THA] issues/concerns for residents or myself the conversation turns into a shouting match, and he goes into a rage and I politely leave. I also remind him to have a "good day".
>
> On several occasions, he has gone into a rage with yelling and screaming in front of other [THA] employees. This madness must be stopped! I know I have been ostracized, psychologically threatened, embarrassed, ridiculed and unreasonably overburdened that is somewhat hindering work performance as a [THA] Employee.

(*Id*.)

Plaintiff contends that she wrote this letter after an "awkward altercation" with Herbert. (Doc. 47 at 6.) She contends she believed that Herbert had "screamed and yelled at her for no apparent [justifiable] reason." (*Id*. at 6.) She also contends that defendant's procedures required her to send copies of the complaint letter to Maddox and Wynn. (*Id*. at 8.) The personnel Handbook does not authorize publication of complaints to the Mayor; the Handbook states:

> If at any time an employee believes (s)he is being subjected to harassment or discrimination, or if an employee becomes aware of such conduct being directed at someone else, that employee should promptly notify his/her supervisor, or the Executive Director. All supervisors should immediately

> notify the Executive Director on receipt of any harassment complaint. . . . In the event the alleged "harasser" is the supervisor, then the report should be taken to the Executive Director. In the event the alleged "harasser" is the Executive Director, then the report should be taken to the chairman of the Board of Commissioners.

(Doc. 39, Ex. A, ex. 5.)

On March 30, 2006, defendant placed plaintiff on administrative leave. (Doc. 39, Ex. A, ex. 16.) Herbert notified plaintiff in writing of her administrative leave; this memo stated:

> On March 29, 2006, I received a letter from you addressed to me regarding a grievance complaint of discriminatory practices allegedly done by me. A copy of this letter was sent to Dr. Cordell Wynn, and Mayor Walt Maddox. The letter is replete with factual inaccuracies and outright lies. I take all discrimination complaints very seriously and all are investigated on their individual merits. However, I will not tolerate you publishing lies about me to third parties. While your complaints and conduct are under investigation, you are hereby placed upon administrative leave with pay until further notice from me.

(*Id*.)

Defendant's general counsel, Paige Oldshue, investigated plaintiff's accusations regarding Herbert's conduct. (*Id*., Ex. C ¶ 2.) Oldshue interviewed Donna Christian, plaintiff's supervisor, and Willie Fort, another supervisor. (*Id*. ¶ 5; *id*., Ex. A at 53, 70.) Plaintiff testified that these individuals would support her allegations. (*Id*., Ex. A at 79, 81-82). However, Christian and Fort told Oldshue that they had neither witnessed Herbert yelling, screaming, or acting in unprofessionally nor had they been told about such behavior. (*Id*., Ex. C ¶ 6; *id*., Ex. D ¶ 4; *id*., Ex. E ¶¶ 4,6.) Plaintiff alleges that her statements were not proven false by Oldshue, but Oldshue only discovered that Christian and Fort had never

witnessed the behavior. (Doc. 47 at 7.) Nevertheless, defendant contends that it determined that plaintiff had lied about Herbert's behavior in her March 29, 2006 letter. (*Id*., Ex. C ¶¶ 7-8.)

According to Herbert and Oldshue, defendant decided to terminate plaintiff based on the false statements made in the March 29, 2006, letter and her insubordination toward Herbert. (*Id*., Ex. B ¶¶ 8-13; *id*., Ex. C ¶¶ 7-8.) On April 13, 2006, Herbert sent plaintiff a letter that stated:

> Effective Thursday, April 13, 2006, your employment with the Tuscaloosa Housing Authority is hereby terminated. Since you began your employment with [THA] you have been openly critical of my management decisions, and your behavior toward me and other employees has been very disruptive. In the past, I have tried to work with you on issues you raised about me and other employees. However, it is now apparent that you, for whatever reason, do not respect me as Executive Director and you are unwilling or unable to accept my authority. As evidence of this, most recently, you sent a copy of a letter to Dr. Cordell Wynn and Mayor Walt Maddox wherein you knowingly made irresponsible, false and malicious statements against me as Executive Director of [THA] with the intent to harm and destroy my reputation as Executive Director. Your letter of March 26, 2006 (which was addressed to me) was replete with false statements and lies about my conduct as Executive Director. While I respect your legal right to make allegations of discrimination against me, your letter went well beyond a complaint of discrimination. Your letter alleges that I have been verbally abusive to you on repeated occasions. Those statements and others in the letter are absolutely false. Your constant attempts to discredit my position have left me with no other choice than to terminate your employment with [THA].

(Doc. 48, Ex. 7.)

Plaintiff filed another EEOC charge on April 18, 2006; this charge stated that it was based on race discrimination and retaliation from September 2001 through April 16, 2006. (Doc. 39, Ex. A, ex. 18.)  This charge contained the following particulars:

> I.  This charge relates back to my earlier charges and any other charges that have been filed alleging racial discrimination by Respondents [sic] against myself and other African-Americans.[2]  . . .  I was terminated by the Respondent on April 13, 2006.
>
> II.  On or about March 8, 2006, I filed a charge of discrimination with the Equal Employment Opportunity Commission against the Respondent alleging race discrimination in promotion.  On March 29, 2006, pursuant to Respondent's policies and procedures, I then wrote a letter to the officials charged with fielding such complaints.
>
> III.  On March 29, 2006, I was placed on administrative leave with pay and on April 13, 2006 I was terminated by Rick Herbert.  Herbert is the Respondent's Executive Director and the individual about whom I complained was treating me in a racially discriminatory fashion.
>
> IV.  It is my belief that I was terminated for reporting and opposing race discrimination in employment in violation of Title VII of the Civil Rights Act of 1984.

(*Id.* [footnote added].)  A right-to-sue letter was issued on this charge on April 19, 2007. (*Id.*, ex. 19.)

---

[2] Although plaintiff's charge purports to relate back to her earlier filed charges, "amendments that raise a new legal theory do not 'relate back' to an original charge of discrimination."  *Manning v. Chevron Chemical Co.*, 332 F.3d 874, 878 (5th Cir. 2003)(citing, *inter alia*, *EEOC v. Miss. Coll.*, 626 F.2d 477, 483-84 (5th Cir. 1980)).  Moreover, once the EEOC issues a right-to-sue letter, "there is no longer a charge pending before the EEOC which is capable of being amended."  *Balazs v. Liebenthal*, 32 F.3d 151, 157 (4th Cir. 1994); *see also* 29 C.F.R. § 1601.28.

Plaintiff filed her Complaint in this court on July 17, 2007. (Doc. 1.) Her Complaint alleges that defendant "discriminated against [her] on the basis of her race with respect to the terms, conditions, benefits and privileges of her employment," and that it "unlawfully retaliated against [her] in the terms, conditions and privileges of her employment when it terminated her for opposing and reporting race discrimination." (*Id.* ¶ 15.). She alleges that defendant denied her promotions in 2005 to the positions of Hope VI Community and Supportive Services Case Manager and Neighborhood Network Coordinator, (*id.* ¶ 10), and that it suspended her in March 2006 and terminated her in April 2006, (*id.* ¶ 12).

### III. DISCUSSION

Plaintiff's Complaint challenges two types of adverse employment actions: (1) the 2005 promotion decisions and (2) her 2006 termination. In her Opposition to defendant's Motion for Summary Judgment, plaintiff complains of a hostile work environment and claims of Title VI violations. However, such claims are not before this court.[3]

Plaintiff's claims based on the 2005 promotion decisions are time-barred and due to be dismissed. On or about March 8, 2006, plaintiff filed an EEOC charge alleging that she had been denied two promotions on the basis of her race. She was issued a right-to-sue letter

---

[3]Plaintiff filed a Motion to Join Claims of Original Complaint, (doc. 33), which asked the court to allow plaintiff to add a Title VI, 42 U.S.C. § 2000d, claim to her Complaint. Section 2000d provides, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. This Motion was denied in open court.

on March 29, 2006, and she received it on March 31, 2006. (Doc. 39, Ex. A, ex. 12.) She did not file a judicial complaint within 90 days or before June 29, 2006.

The Supreme Court has held "that a claimant who failed to file a complaint within the 90-day statutory time period mandated by Title VII, 42 U.S.C. § 2000e-5(f)(1) (1982 ed.), had forfeited her right to pursue her claim.." *Hallstrom v. Tillamook County*, 493 U.S. 20, 31 (1989)(citing *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 149 (1984)); *see also Brown v. Unified School Dist. 501, Topeka Public Schools*, 465 F.3d 1184, 1186 (10th Cir. 2006)("If the claimant fails to file suit within the ninety-day window, the lapsed claims are not revived by including them in a second EEOC charge and restarting the process.") (citations omitted); *Gordon v. MCG Health, Inc.*, 301 F. Supp. 2d 1333, 1339-40 (S.D. Ga. 2003)("the plaintiff may not use her last EEOC charge as a means of bringing before the Court the four, time-barred charges").

Because plaintiff did not file a Complaint within 90 days of receiving her right-to-sue letter, the court finds that she has forfeited her right to pursue her claims based on defendant's promotion decisions. Therefore, defendant's motion for Summary Judgment will be granted and plaintiff's promotion claims will be dismissed.

Plaintiff's claims based on her April 2006 EEOC charge were timely filed. In this charge, plaintiff alleged that defendant had terminated her in retaliation for complaining of racial discrimination. (Doc. 39, Ex. A, ex. 18.) She did not allege that defendant had

9

terminated her because of her race. (*See id.*)  Therefore, the court finds that the only claim before the court is a claim of retaliatory discharge.

In order to establish a prima facie case of retaliation in violation of Title VII, plaintiff must establish:  (1) a statutorily protected expression;  (2) an adverse employment action; and (3) a causal link between the protected expression and the adverse action. *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993).  "The causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)(internal citations and quotations omitted).  At a minimum, a plaintiff must prove "that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008)(internal quotations and citations omitted). "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)(quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)).

"Once a plaintiff has established a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action. The ultimate burden of proving by a preponderance of the evidence that the reason

provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff." *Id.* (citations omitted).

> To survive summary judgment, the plaintiff must . . . come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. To show that the employer's reasons were pretextual, the plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence. If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim.

*Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004)(internal quotations and citations omitted).

The facts are not disputed that Herbert, the decision-maker, knew about the letter in which plaintiff complained of race discrimination.[4] Herbert placed plaintiff on administrative leave the day after she sent the letter and he terminated her two weeks later. This evidence is sufficient to establish a prima facie case of retaliation with regard to plaintiff's termination.

---

[4] Defendant contends that plaintiff cannot establish a prima facie case of retaliation because she cannot prove that Herbert was aware of her March EEOC charge. However, the evidence is undisputed that plaintiff's letter of March 29, 2006, complained of discrimination and, therefore, is protected activity. Herbert's lack of knowledge of plaintiff's March EEOC charge is not dispositive of plaintiff's retaliation claim.

11

Defendant contends that Herbert placed plaintiff "on administrative leave, and later terminated [her] as a result of the defamatory letter that she published to a third party coupled with her insubordination." (Doc. 38 at 15.) Plaintiff contends that she had a good faith belief that her letter was an appropriate manner to raise her complaints about race discrimination. (Doc. 47 at 14-15.) She also contends that evidence that Herbert refused to answer a question regarding whether he had any African-American friends could be evidence of pretext.[5] (*Id*. at 18 [citing "Herbert's Dep., pg. 68, 18"].)[6] Additionally, she alleges evidence that Herbert did not evaluate defendant's employees' performance on a regular basis "lends an amber to the raging torment of discriminatory practices on others." (*Id*. at 19.) Finally, plaintiff contends, "The Executive Director was allowed to hire family members . . . against [defendant's] policy and discriminate against Plaintiff, also against the policy . . . . The result is evident by the internal audit of the County Commissioners.[7] (*Id*. at 21.)

Plaintiff's contentions do not meet defendant's articulated reason "head-on" and rebut it. *Springer v. Convergys Customer Management Group Inc.*, 509 F.3d 1344, 1350 (11th Cir. 2007)("If the proffered reason is one that might motivate a reasonable employer, a plaintiff

---

[5]Plaintiff contends, "One attempting to prove he is not acting out of a discriminatory heart need not be silent on whether or not he considers African Americans friends." (Doc. 47 at 18.)

[6]Herbert's deposition is not in the record.

[7]The internal audit of the County Commissioners is not in the record.

cannot recast the reason but must meet it head on and rebut it." (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004))). "No matter how medieval [an employer's] practices, no matter how high-handed its decisional process, no matter how mistaken [its] managers, [Title VII] does not interfere. Rather [the court's] inquiry is limited to whether the employer gave an honest explanation of its behavior." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000)(quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991))(other citations omitted).

Plaintiff's allegations regarding her good faith belief regarding complaint procedures, Herbert's lack of African-American friends, his failure to evaluate her performance, and his hiring of family members is not evidence that defendant's proffered reason for her termination was not an honest explanation. *See Crawford v. City of Fairburn*, 482 F.3d 1305, 1308-09 (11th Cir. 2007). Therefore, the court finds that plaintiff has not rebutted defendant's articulated reason and defendant is entitled to judgment as a matter of law.

## **CONCLUSION**

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law. An Order granting defendant's Motion for Summary Judgment, (doc. 38), will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this the 29th day of September, 2009.

                                                          */s/ Sharon Lovelace Blackburn*
                                                          SHARON LOVELACE BLACKBURN
                                                          CHIEF UNITED STATES DISTRICT JUDGE